THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT BOCKMAN, Defendant-Appellee.

Second District   No. 2—00—1309

Opinion filed March 14, 2002.

Ronald G. Matekaitis, State's Attorney, of Sycamore (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE CALLUM delivered the opinion of the court:

The State charged defendant, Robert Bockman, with two counts of burglary (720 ILCS 5/19—1(a) (West 2000)). Defendant moved to suppress evidence that consisted of recordings of certain conversations. The trial court granted the motion after determining that the applications for authority to use an eavesdropping device to overhear and record the conversations were deficient. The State appeals and contends that the applications were not deficient. Alternatively, the State contends that, even if the applications were deficient, it was error to suppress the recordings because the police acted in good-faith reliance on the orders that authorized the use of the eavesdropping device. We affirm.

We initially note that defendant has not filed an appellee's brief in this court. However, we will consider the merits of the appeal under *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

On February 9, 2000, Robert Redel, a De Kalb police detective, submitted an application (application No. 1) to Judge Douglas R. Engel for authority to use an eavesdropping device. Application No. 1 sought authority to use the device from 4 p.m. on February 9, 2000, through 3:59 p.m. on February 19, 2000.

Application No. 1 included a detailed description of a report of a burglary Mark Wolff allegedly gave to the De Kalb police on February 8, 2000. Application No. 1 indicated that Wolff told the police that the burglary had occurred about a week and a half earlier and that Wolff had committed the burglary with Jerry Cook and defendant. Application No. 1 also indicated that Wolff told the police about another bur-

glary that occurred on January 30, 2000, and that, based on Wolff's description of the burglaries, Redel believed that a felony had been committed.

In addition to describing the burglaries, application No. 1 indicated that Redel had been authorized by the De Kalb County State's Attorney to apply to a judge for authority to use an eavesdropping device and that a copy of the State's Attorney's authorization was attached to application No. 1. Application No. 1 stated that the State's Attorney's authorization was "made a part hereof as Exhibit A."

Exhibit A was signed by an assistant State's Attorney. Exhibit A stated that Redel had been authorized to apply to a judge to use an eavesdropping device during the times indicated on Application No. 1 "to overhear (and record) a conversation or conversations occurring between MARK A. WOLFF consenting party, and ROBERT A. BOCKMAN AND JERRY COOK."

On February 9, 2000, Judge Engel issued an order (order No. 1) authorizing Redel and the De Kalb police department to use an eavesdropping device to overhear and record conversations among Wolff, Cook, and defendant during the period indicated in application No. 1. Order No. 1 stated that there was reasonable cause to believe that defendant and Cook had committed a Class 2 felony burglary and that conversations concerning the felony would be obtained through the use of the eavesdropping device. The order specified that Wolff consented to the use of the device.

On February 24, 2000, Redel submitted another application (application No. 2) to Judge Engel for authority to use an eavesdropping device. Application No. 2 was virtually identical to application No. 1 with respect to the description of the burglaries and the parties involved in the burglaries. However, application No. 2 was different in that it indicated that it was an application for an extension of a previous order, and it sought the authority to use the eavesdropping device from 4 p.m. on February 24, 2000, through 3:59 p.m. on March 4, 2000.

Like application No. 1, application No. 2 referred to a copy of a State's Attorney's authorization to apply to a judge for an order authorizing the use of an eavesdropping device and stated that the State's Attorney's authorization was attached to application No. 2 as exhibit A. The State's Attorney's authorization attached to application No. 2 contained the same information as the State's Attorney's authorization attached to application No. 1. Application No. 2 incorporated exhibit A as a part of the application.

On February 24, 2000, Judge Engel issued an order (order No. 2) authorizing Redel and the De Kalb police department to use an eaves-

dropping device for the period specified in application No. 2. Like order No. 1, order No. 2 authorized the use of an eavesdropping device to record conversations among Wolff, Cook, and defendant and identified Wolff as the consenting person. Order No. 2 also stated that there was reasonable cause to believe that defendant and Cook had committed a Class 2 felony burglary and that conversations concerning the felony would be obtained through the use of the device.

On March 9, 2000, defendant was charged by complaint with two counts of burglary. The State later charged defendant by information. Defendant moved to suppress evidence. The motion sought to suppress conversations between defendant and Wolff that were recorded during the periods specified in orders No. 1 and No. 2.

At a hearing on the motion, defendant argued that both application No. 1 and application No. 2 were not completed in full compliance with the governing statutes. Defendant first asserted that the applications did not comply with sections 108A—3(a)(2)(b), 108A—3(a)(2)(c), and 108A—3(a)(2)(d) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/108A—3(a)(2)(b) through (a)(2)(d) (West 2000)). These sections provide that each application for an order authorizing the use of an eavesdropping device shall include:

> "(b) a description of the type of communication sought to be monitored; (c) the identity of the party to the expected conversation consenting to the use of an eavesdropping device; (d) the identity of the person, if known, whose conversations are to be overheard by the eavesdropping device." 725 ILCS 5/108A—3(a)(2)(b) through (a)(2)(d) (West 2000).

Defendant also argued that the applications were deficient because they did not include facts to establish reasonable cause to believe that conversations would occur relating to the felonies. To support this argument, defendant cited section 108A—4 of the Code, which provides, in relevant part:

> "The judge may authorize or approve the use of the eavesdropping device where it is found that:
>
> ***
>
> (b) there is reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony under Illinois law;
>
> (c) there is reasonable cause for believing that particular conversations concerning that felony offense will be obtained through such use[.]" 725 ILCS 5/108A—4(b), (c) (West 2000).

With respect only to application No. 2, defendant also argued that the application was deficient because it failed to comply with sections 108A—3(a)(4) and 108A—3(a)(5) of the Code (725 ILCS 5/108A—

3(a)(4), (a)(5) (West 2000)). These sections provide that each application to use an eavesdropping device shall include:

"(4) a statement of the existence of all previous applications known to the individual making the application which have been made to any judge requesting permission to use an eavesdropping device involving the same persons in the present application, and the action taken by the judge on the previous applications;

(5) when the application is for an extension of an order, a statement setting forth the results so far obtained from the use of the eavesdropping device or an explanation of the failure to obtain such results." 725 ILCS 5/108A—3(a)(4), (a)(5) (West 2000).

Following the hearing, Judge Engel, the same judge who issued orders No. 1 and No. 2, took the matter under advisement. Judge Engel subsequently suppressed the recordings, ruling that "the exact letter of the law was not followed in obtaining the eavesdropping order." The State's timely notice of appeal and certificate of impairment followed.

On appeal, the State contends that applications for authority to use an eavesdropping device should be read in a commonsense manner and that, when the applications in this case are so read, they complied with the letter and spirit of the governing statutes. In the State's view, Judge Engel improperly second-guessed his decisions to issue orders No. 1 and No. 2, and his original decisions to approve the applications should stand. Alternatively, the State contends that, even if the applications were deficient, the recordings should not have been suppressed because the police relied in good faith on the orders authorizing the use of the eavesdropping device.

■ Generally, when a motion to suppress evidence involves factual determinations or credibility assessments, a reviewing court will not reverse a trial court's ruling unless it was manifestly erroneous. *People v. Buss*, 187 Ill. 2d 144, 204 (1999). However, where, as here, the facts are not in dispute and the credibility of the witnesses is not at issue, our review is *de novo*. *People v. Anthony*, 198 Ill. 2d 194, 201 (2001).

■ This case involves a situation where one party to a recorded conversation purportedly consented to the use of an eavesdropping device. The restrictions placed on the use of an eavesdropping device in such situations are statutory. *People v. Sylvester*, 86 Ill. App. 3d 186, 190 (1980). Because Illinois citizens are entitled to be safeguarded from unnecessary governmental surveillance and other unreasonable intrusions into their privacy, the statutory restraints on eavesdropping must be strictly construed with respect to all requests and consents for the authority to use an eavesdropping device. *People v. Monoson*, 75 Ill. App. 3d 1, 5 (1979). This court has recently reiterated the need

to strictly construe statutes governing the use of an eavesdropping device. *People v. Nunez*, 325 Ill. App. 3d 35, 45 (2001).

■ In applying these principles to this case, we agree with the State's argument that both applications provided sufficient information to comply with sections 108A—3(a)(2)(b), 108A—3(a)(2)(c), and 108A—3(a)(2)(d) of the Code (725 ILCS 5/108A—3(a)(2)(b) through (a)(2)(d) (West 2000)). Each application referred to an attached State's Attorney's authorization that was expressly made a part of the application. The trial court therefore should have considered each State's Attorney's authorization to be a part of the application to which it was attached. The State's Attorney's authorizations provided information sufficient to satisfy the requirements in question by describing the type of communications to be monitored (a conversation or conversations), by identifying the consenting party (Wolff), and by identifying the persons whose conversations were to be overheard (Cook and defendant).

However, we disagree with the State's argument that the applications contained facts sufficient to establish a reasonable belief that conversations concerning the described felony would be obtained through the use of the eavesdropping device. We realize that this requirement is not in section 108A—3 of the Code (725 ILCS 5/108A—3 (West 2000)), the section that addresses the requirements for applications to use an eavesdropping device. Rather, it is in section 108A—4(c) of the Code (725 ILCS 5/108A—4(c) (West 2000)). Nonetheless, it is properly deemed a requirement in an application (see *People v. Ellis*, 122 Ill. App. 3d 900, 902-03 (1984)).

Here, neither the applications themselves nor the attached State's Attorney's authorizations contained anything that could be construed as a factual basis sufficient to establish a reasonable belief that conversations regarding the alleged felonies would be obtained through the use of the proposed eavesdropping device. For this reason, we conclude that the trial court correctly determined that both of the applications were deficient.

■ We also disagree with the State's argument that application No. 2 satisfied the requirements for an application for an extension of the use of an eavesdropping device under sections 108A—3(a)(4) and 108A—3(a)(5) of the Code (725 ILCS 5/108A—3(a)(4), (a)(5) (West 2000)). Application No. 2 indicated that there had been a previous application for the use of an eavesdropping device involving the same persons and that application No. 2 was for an extension of a previous order authorizing the use of an eavesdropping device. Therefore, application No. 2 may have complied with section 108A—3(a)(4) in a general sense. However, application No. 2 contained nothing that

could reasonably be construed as a "statement setting forth the results so far obtained from the use of the eavesdropping device or an explanation of the failure to obtain such results" as is required by section 108A—3(a)(5) (725 ILCS 5/108A—3(a)(5) (West 2000)). Thus, in addition to its deficiency for failing to contain facts sufficient to establish reasonable cause to believe that conversations would be obtained concerning the alleged felony, application No. 2 was also deficient because it failed to comply with section 108A—3(a)(5).

The State's reliance on *People v. Manuel*, 294 Ill. App. 3d 113 (1997), *People v. Ellis*, 122 Ill. App. 3d 900 (1984), and *People v. Scribner*, 108 Ill. App. 3d 1138 (1982), as authority for the principle that applications should be read in a commonsense manner does not change our conclusions. In each of those cases, the court was able to determine from the totality of the circumstances or in some other way that the State had met the requirements for an application for authority to use an eavesdropping device. In this case, there simply is nothing in the record that shows that the mandatory requirements in question were satisfied.

We recognize that, at the hearing on the motion to suppress, the State sought to present additional evidence that might show that the requirements had been satisfied through Judge Engel's questioning of Redel. However, the State made no offer of proof indicating what the evidence might be. Thus, the record contains nothing that supports the State's position.

■ Alternatively, the State contends that, even if the applications were deficient, it was error to suppress the recordings because the officers who used the eavesdropping device did so in good-faith reliance on orders No. 1 and No. 2. To support this contention, the State relies on *United States v. Moore*, 41 F.3d 370 (8th Cir. 1994).

In *Moore*, law enforcement officials applied to a judge for an order authorizing the use of a wiretap. The application satisfied all of the statutory requirements, and the judge signed an order authorizing the use of the wiretap. A police officer asked the judge for a copy of the signed order but was inadvertently given an unsigned copy. The United States Court of Appeals agreed with the district court that the unsigned order was facially insufficient, but decided against suppressing the evidence obtained through the wiretap because the police officer acted in good-faith reliance on the fact that the otherwise valid order had been signed by the judge. *Moore*, 41 F.3d at 376-77.

In this case, unlike in *Moore*, the record indicates that the mandatory statutory requirements for an application to use an eavesdropping device were not fulfilled. In addition, nothing in the record shows that Redel could have concluded in good faith that the statutory

requirements had been satisfied. Therefore, we conclude that the good-faith exception to the exclusionary rule does not apply here.

Based on the foregoing, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

HUTCHINSON, P.J., and GEIGER, J., concur.